CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 10 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DAVID J. HALL, JR., <br> Plaintiff, <br><br> v. <br><br> JO ANNE B. BARNHART, <br> COMMISSIONER OF SOCIAL SECURITY, <br> Defendant. | Civil Action No. 6:05cv00039 <br><br> By: Hon. Michael F. Urbanski <br> United States Magistrate Judge |

## MEMORANDUM OPINION

Plaintiff David J. Hall ("Hall") brought this action for review of the Commissioner of Social Security's decision denying Hall's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f. The parties have consented to the undersigned's jurisdiction, and the case is before the court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision. Because the decision of the Commissioner is amply supported by substantial evidence and was legally correct, there is no basis for reversal or remand. Accordingly, the defendant's motion for summary judgment must be granted and this appeal dismissed.

### I.

Plaintiff was born in 1954, has a twelfth grade education plus one year of college education, and past work experience as a textile machine operator, housekeeper, packer, construction laborer, janitor, and file clerk. (Administrative Record, hereinafter "R." at 16, 151, 195) Plaintiff's SSI application claimed onset of disability as of June 30, 2001, stemming from high blood pressure, diabetes, hepatitis C/liver disease, and depression. (R. 16, 181, 186) After

an administrative hearing, the administrative law judge ("ALJ") rendered a decision on October 22, 2003, finding that while Hall has severe physical impairments, his depression is not severe, and he is not disabled because he retains the capacity to perform light work, including his former employment as a packer for the Home Shopping Network and/or as a janitor or cleaner. (R. 23)

After the ALJ's decision, Hall continued treatment for the above mentioned illnesses, and additional medical records were submitted to the Appeals Council. The Appeals Council denied Hall's request for review of the denial of SSI benefits. The Notice of Appeals Council Action indicated that it considered the additional medical evidence, but found that the evidence did not provide a basis for changing the ALJ's decision. (R. 7) The ALJ's decision became final for purposes of judicial review under 42 U.S.C. § 405(g) at that time. Plaintiff then filed this action challenging the Commissioner's decision denying his claim for benefits.

## II.

Hall argues that the ALJ erred in finding that his depression was not severe and his combined physical and mental ailments did not impose significant functional limitations on his ability to work. In the alternative, Hall requests that the court remand this case to the Commissioner for consideration of new evidence which allegedly establishes Hall's continuing impediment to employment due to chronic hepatitis C and severe depression, which are more severe than found by the ALJ.

The Commissioner counters that the record does not support a finding of disability. Rather, the existing records at the time of the administrative hearing and the records submitted to the Appeals Council support the ALJ's finding, as they demonstrate that despite continuing treatment, Hall was not disabled. Further, those records establish that in October, 2003, Hall

began working full-time at the Veterans' Administration Medical Center ("VAMC"). Accordingly, the Commissioner argues these records provide no basis to question the ALJ's decision.

Judicial review of disability cases is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Therefore, the questions presented are (1) whether there is substantial evidence to support the ALJ's assessment that Hall's depression was not severe; (2) whether there is substantial evidence to support the ALJ's finding that Hall's combined physical and mental conditions did not significantly impact his ability to work; and (3) whether new evidence submitted to the Appeals Council relating to Hall's subsequent medical history contradicts, conflicts, or calls into doubt the ALJ's decision. The existing medical record at the time of the ALJ's decision amply supports his conclusions. Further, while the new evidence reveals that Hall continued to be treated for his physical and mental ailments, these records also reflect that in October, 2003, Hall began working full-time. As such, the court finds the record is plainly sufficient to meet the substantial evidence standard and that the new evidence would not affect the ALJ's finding that Hall was not disabled.

3

Case 6:05-cv-00039-mfu   Document 19   Filed 10/10/06   Page 3 of 12   Pageid#: 67

## III.

First, Hall argues that the ALJ erred in finding his depression was not severe and that Hall's complaints regarding his depression were not wholly credible.

Hall first sought treatment for depression in March, 2002. (R.312-316) He claimed that he began to feel worthless and isolated and had become more irritable two months after beginning Interferon/Ribavirin treatment for hepatitis C. (R. 312-16) Hall also claimed he had one prior suicidal ideation, but did not take any steps to further his plan. (R. 313) Although his physicians, Dr. Cutillar and Dr. Marcus, noted his mood was depressed, they indicated Hall did not exhibit any symptoms of delusions, psychosis, and/or impairments in judgment or mental function. (R. 315)

In June, 2002, Hall reported he was feeling more depressed due to stress regarding his liver condition, fights with his girlfriend, and the death of his girlfriend's son. (R. 324) Despite these complaints, Dr. Cutillar noted that Hall had no delusions, psychotic symptoms, and/or impairments in judgment or mental function. (R. 324) By December 18, 2002, Hall reported to his physician that he no feelings of depression or hopelessness, nor was he experiencing a lack of interest in things or a loss of pleasure in doing things. (R. 291)

Hall did not seek further treatment for depression until August 15, 2003. (R. 374, 394-95) At that time, Hall complained his depression began in February, 2003, following the death of his fiancé. (R. 374) Upon examination, Dr. Griffeth, a psychiatrist, found that Hall's depression was primarily due to his medication and treatment for hepatitis C, and admitted him to the VAMC. (R. 374, 397) However, Dr. Griffeth noted that stressors to Hall's depression were his lack of permanent housing, limited finances, and joblessness. (R. 397) During an

4

initial exam with Dr. Vishal Anand, a staff psychiatrist, Hall made several conflicting statements regarding his alleged depression and thoughts of suicide. (R. 398-99) Hall's responses to Dr. Anand's questions led Dr. Anand to believe that Hall was not suffering from sadness, but rather was experiencing anger and hostility in response to environmental stressors. (R. 372, 377, 401, 438) Hall remained in the VAMC for several days for observation and counseling.

During a discharge plan interview on August 21, 2003, Hall indicated that he hoped to get a job through the Johnson City Veterans' Administration. (R. 366) His case manager, Tammy S. Snyder, noted during the interview Hall appeared motivated and goal directed. (R. 366) The same day he was examined by Dr. Anand, who reported that Hall was calm, pleasant, euthymic,[1] and maintained a fully reactive affect with no evidence of potential dangerousness to himself or others. (R. 368) But later that day, Hall complained his mood was "so-so" because of the instability in his housing arrangements after his discharge from the VAMC. (R. 369) Hall was released on August 22, 2003, with no suicidal or self-harm ideation and no hallucinations. (R. 436, 536) In Hall's discharge summary, Dr. Anand opined that based on Hall's responses during their sessions during his seven day hospitalization and due to the dramatic and rapid improvement in his mood, he believed Hall's concerns with his living arrangements led him to seek hospitalization, not any alleged mental health condition. (R. 438)

Hall returned to the VAMC emergency room on September 12, 2003, complaining that his desire to consume excessive amounts of alcohol was increasing. (R. 493, 506) During his initial exam, Dr. Lauren Lehmann, a staff psychiatrist, diagnosed his mood at euthymic and his

---

[1]Euthymia is a state of mental tranquility and well-being, neither depressed nor manic. Dorland's Illustrated Medical Dictionary 650 (30th ed. 2003).

5

emotional range as good. (R. 507) Additionally, she noted that though Hall was being treated for depression related to his hepatitis C treatment, he did not complain of any current depression and his long term prognosis related to his depression could be improved by employment. (R. 492-93, 508) Hall remained at the VAMC for several days for observation and treatment, and on or about September 18, 2003, he began an eight week depression and substance abuse recovery program. (R. 454, 784, 789-793) As part of the program, Hall participated in individual and group therapy sessions with a religious leader, a recreational therapist, a kinesitherapist, psychologists, and psychiatrists. (R. 454, 784, 789-792) Hall was released from the in-patient portion of the program on October 10, 2003, and at that time, Dr. Lehmann noted that Hall's mood was euthymic and he had a linear, logical, and goal oriented thought process. (R. 582, 795) Additionally, following Hall's last meeting with the Grief Support Group on December 4, 2003, the group leader, Maxine Joiner, Occupational Therapist, noted that Hall had been an inspiration to the group as he had the ability to put his grief into "perspective" and learn the lessons of life from his grief. (R. 733)

After completing the substance abuse and depression program, Hall began outpatient counseling at the VAMC. On beginning this treatment, Dr. Pavan Reddy, a staff psychiatrist, conducted Hall's initial mental assessment on January 16, 2004. (R. 690-91) Dr. Reddy reported that although Hall had some depression, it ranked only a 4-out-of-10 and was related to his substance abuse and hepatitis C treatment. Finally, he noted although Hall voiced concerns about getting a job and a place to stay, his overall outlook was positive. (R. 690) In March, 2004, Hall again complained that he was depressed, but he did not seek any treatment for depression. (R. 887) Yet, two months later, when he presented to the VAMC for a colonoscopy,

6

Hall informed his physicians that he had no emotional problems, and a pre-sedation interview for depression was negative. (R. 551, 635)

Although it is clear that Hall claims to be depressed and has been treated for depressive disorder, there is substantial evidence to support the ALJ's finding that his depression is not severe. Hall's claims of depression are inconsistent at best, and his rapid and marked mood response merely on being admitted to the VAMC call into doubt his credibility. Further, the fact that his treating physicians have attributed his alleged depression to environmental stressors, rather than actual depressive disease, raises issue as to the severity of his depression. As such, the court finds substantial evidence in the medical record to support the ALJ's finding that Hall's depression was not severe.

## IV.

Second, Hall argues that the ALJ erred in finding that Hall's combined physical and mental ailments did not significantly impact his ability to work. Specifically, Hall argues that because his hepatitis C did not significantly improve or respond to treatment, the ALJ's reliance on state agency physicians' opinions suggesting Hall's hepatitis C and resultant pain and fatigue would be cured was erroneous. Further, Hall argues that the ALJ ignored evidence demonstrating that Hall's depression continued after his hepatitis C treatment ended.

There is no question that Hall has severe impairments caused by chronic hepatitis C, as the ALJ concluded. (R. 17) The question in this case is whether there is substantial evidence to support the ALJ's conclusion that despite the effects of chronic hepatitis C and depression, Hall suffered only minimal functional limitations.

7

As noted above, Hall's complaints regarding the severity of his depression are at best spotty. His medical record establishes that his depression was not long-lived nor did it significantly hamper his ability to function or participate in daily activities, and his psychiatrists found that his long term prognosis for complete recovery would improve with employment.

Similarly, Hall's complaints regarding his physical limitations due to chronic hepatitis C are likewise questionable. Hall began hepatitis C treatment in March, 2001. (R. 268) A liver biopsy in July, 2001 showed moderate chronic hepatitis with bridging fibrosis, and on October 15, 2001, Hall began receiving Interferon/Ribavirin treatment. (R. 257, 268) At that time, he reported to his physician that he had some pain in his abdomen, but specifically stated the pain had not impeded his daily activities, which included daily walks of 2-3 miles. (R. 268, 275, 342) Likewise, during subsequent visits to the VAMC for treatment over the next 22 months, Hall repeatedly denied having pain or fatigue which limited his daily activities. (R. 297, 334, 342, 350, 351). The Interferon/Ribavirin treatment was discontinued in May, 2002 due to non-responsiveness. (R. 324, 327)

Hall was assessed by a state agency physician, on August 1, 2001. (R. 269) The state agency physician found that despite Hall's diabetes and chronic hepatitis C, he could frequently lift 50 pounds, occasionally lift 25 pounds, stand, walk, and/or sit for 6 hours in a workday, and had unlimited push and/or pull ability. (R. 269-75) Additionally, the state agency physician noted that while diabetes and hepatitis C may cause fatigue and pain, such symptoms would not be completely incapacitating. (R. 275) Hall was assessed by a second state agency physician, Dr. Michael J. Hartman, on November 28, 2001. (R. 278-85) Dr. Hartman found that Hall could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or sit for six hours during

8

a workday, and had no push/pull limitations. (R. 279). Furthermore, Dr. Hartman noted that Hall's complaint of disabling fatigue was not credible based on his reports of taking daily walks, doing household chores, and cooking. (R. 275)

Hall did not make any subsequent claims of pain or fatigue related to hepatitis C until August, 2003. (R. 382) However, even then he still reported that he walked frequently, had no mobility limitations, and that he was not in immediate pain. (R. 388-89) On or about September 18, 2003, Hall was admitted into an eight week substance abuse and depression rehabilitation program at the VAMC, which included physical and recreational therapy components. (R. 454, 784, 789-792) At the inception of the program, Hall advised his physical therapist, Carl E. Williams, RKT, that he regularly participated in a modified conditioning program which consisted of aerobics, individual exercises, and group calisthenics. (R. 445) Williams found that Hall was in fair physical condition and should continue with an exercise and calisthenics program. (R. 446, 600) Likewise, Hall advised his recreational therapist, Mark Hogan, that he had no health problems which would limit his participation in recreational and leisure activities. (R. 482, 598) During the course of the program Hall participated in 18 kinesitherapy sessions, after which he showed a marked improvement in his overall level of fitness. (R. 774) Hall completed seven sessions with the recreational therapist and participated in two off-site recreation activities: a tour of Roanoke and bowling. (R. 788) Additionally, during the course of the program, one of Hall's counselors, Terry Ross, M.S., V.R.S., stated Hall was able to work, but was a "master manipulator" of the system. (R. 363)

There are no opinions from any treating physicians indicating Hall is disabled from working due to the combined effects of his depression and hepatitis C symptoms. In fact, in

9

September 2003, Hall's psychiatrist found that his mental condition would be improved by employment. (R. 493) Additionally, Hall repeatedly informed his treating physicians that his daily activities, including his ability to work, were not limited by pain or fatigue. As such, the court finds that there was substantial evidence to support the ALJ's finding that despite suffering from depression and chronic hepatitis C, Hall's ability to work was not substantially impacted.

During the course of the rehabilitation program, Hall began full-time employment. On October 29, 2003, Hall advised his substance abuse therapist that he was working every day and enjoyed the work very much. (R. 767) Hall began working in the VAMC laundry service facility on October 14, 2003 and continued in this position until February 13, 2004. (R. 594, 677, 682) In March, 2004, Hall was assigned to work 40 hours a week in the greenhouse as part of his ongoing substance abuse rehabilitation plan. (R. 589, 675)

On April 1, 2004, Hall requested further VAMC job search assistance. (R. 671) Hall advised Terry Ross, his job search counselor and educational treatment plan supervisor, that he had no emotional or physical limitations which would act as a barrier to employment. (R. 672) Because of his prior prison record, Hall was initially assigned to six months work service with CWT/EDS so that he may develop a good work history, and on April 4, 2004, he was placed at the VAMC laundry service facility. (R. 637, 671) On May 10, 2004, Hall was transferred to the canteen, and on May 17, 2004 he was hired for a full-time position in the dietetics food service center. (R. 637)

In determining that Hall's impairments did not significantly impact his capacity to work, the ALJ may consider medical evidence and evidence pertaining to the claimant's daily activities including housework, volunteer work, and shelter work. 20 C.F.R. §§ 404.1520, 416.920, see

also U.S. v. Somsamouth, 352 F.3d 1271, 1275-76 (9th Cir. 2003); Akin v. Shalala, 17 F.3d 1436 (10th Cir. 1994). While seeking SSI benefits, Hall began working in a full-time position at the VAMC. This employment continued after the ALJ's decision. Even assuming this work is shelter work, which may not qualify as substantial gainful employment, the fact that Hall was physically and mentally able to maintain a regular forty hour per week work schedule demonstrates that Hall retains the functional capacity to work. See 20 C.F.R. §§ 404.1574, 416.971, 416.972. This gives further support to the ALJ's determination that Hall maintained the residual functional capacity to do light work.

V.

In the alternative to finding that the ALJ erred, Hall requests that the court remand this matter under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence. Sentence six applies specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council. The court may remand a case under sentence six to the Commissioner upon a showing of new, material evidence, and when good cause exists for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).

A reviewing court may remand a case to the Commissioner on the basis of newly discovered evidence only if the following four prerequisites are met: (1) the evidence must relate back to the time t he application was first filed, and it must be new, not merely cumulative; (2) the evidence must also be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the

11

Commissioner; and (4) the claimant must present to the remanding court at least a general showing of the nature of the new evidence. Borders, 777 F.2d at 955; see also Wilkins v. Sec'y, Dep't Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

As noted above, Hall's new evidence clearly establishes that while seeking SSI benefits and subsequent to the disability hearing, he obtained full-time employment at the VAMC. As such, the court finds that this information would not have reasonably impacted the ALJ's finding that Hall was not disabled. Thus, a sentence six remand is not warranted and the decision of the ALJ is affirmed.

## VI.

For the reasons stated above, the court affirms the final decision of the Commissioner and grants the defendant's motion for summary judgment.

The Clerk of the Court is hereby directed to send a certified copy of the Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 10th day of October, 2006.

Michael F. Urbanski
United States Magistrate Judge